MAX N. TOBIAS, JR., Judge.
| jThe plaintiff/appellant, Poydras Center, LLC, owner and lessor of the building and parking garage located at 650 Poydras Street in New Orleans, appeals a judgment holding that they could not evict their lessee, Intradel Corporation, from two parking spaces located in the premises. As *81 error, the plaintiff/appellant argues that the trial court erred by (1) failing to grant its request for eviction, (2) incorrectly interpreting the contract of lease, (3) relying upon Intradel Corporation’s arguments of fact regarding an alleged oral modification of the written lease, (4) modifying the term of two of the parking spaces from month-to-month to permanent, and (5) admitting hearsay evidence and preventing it from cross-examining witnesses or submitting testimony. Because all of the assignments of error are essentially one issue, we discuss them as one. For the reasons that follow, we reverse.
By a written contract of lease dated 10 January 2005 (see La. C.C. arts. 2668, et seq.), Intradel Corporation (“Intradel”) leased from Poydras Center, LLC (“Lessor”) suite 2805 and four parking spaces (referred to in the lease as “parking ^permits”) located in the structure known as the Poydras Center at 650 Poydras Street. The initial term of the lease was from 1 March 2005 through 31 December 2010 for the suite and for two of the four parking spaces; the other two-parking spaces had a term of month-to-month (see La. C.C. arts. 2678, 2680, and 2727).
In pertinent part, the lease reads as follows:
This lease may be modified only be [sic] a written agreement signed by Landlord and Tenant. Landlord and tenant expressly agree that there are and shall be no implied warranties of merchantability, habitability, suitability, fitness for a particular purpose or of any other kind arising out of this Lease, all of which are hereby waived by Tenant, and that there are no warranties which extend beyond those expressly set forth in this Lease. 35. LIMITATION OF LIABILITY EXCEPT TO THE EXTENT SPECIFICALLY ADDRESSED HEREIN, TENANT SHALL NOT HAVE THE RIGHT TO AN ABATEMENT OF RENT OR TO TERMINATE THIS LEASE AS A RESULT OF LANDLORD’S DEFAULT AS TO ANY COVENANT OR AGREEMENT CONTAINED IN THIS LEASE OR AS A RESULT OF THE BREACH OF ANY PROMISE OR INDUCEMENT IN CONNECTION HEREWITH, WHETHER IN THIS LEASE OR ELSEWHERE AND TENANT HEREBY WAIVES SUCH REMEDIES OF ABATEMENT OF RENT AND TERMINATION. TENANT HEREBY AGREES THAT TENANT’S REMEDIES FOR DEFAULT HEREUNDER OR IN ANY WAY ARISING IN CONNECTION WITH THIS LEASE INCLUDING ANY BREACH OF ANY PROMISE OR INDUCEMENT OR WARRANTY, EXPRESSED OR IMPLIED, SHALL BE LIMITED TO SUIT FOR DIRECT AND PROXIMATE DAMAGES PROVIDED THAT TENANT HAS GIVEN THE NOTICES AS HEREINAFTER REQUIRED. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS LEASE, THE LIABILITY OF LANDLORD TO TENANT FOR ANY DEFAULT BY LANDLORD UNDER THIS LEASE SHALL BE LIMITED TO THE INTEREST OF LANDLORD IN THE BUILDING AND THE PROPERTY AND TENANT AGREES TO LOOK J^SOLELY TO LANDLORD’S INTEREST IN THE BUILDING AND THE PROPERTY FOR THE RECOVERY OF ANY JUDGMENT AGAINST THE LANDLORD, IT BEING INTENDED THAT THE LANDLORD SHALL NOT BE PERSONALLY LIABLE FOR ANY JUDGMENT OR DEFICIENCY. TENANT HEREBY COVENANTS THAT, PRIOR TO THE FILING OF ANY SUIT FOR DIRECT *82 AND PROXIMATE DAMAGES, IT SHALL GIVE LANDLORD AND ALL MORTGAGEES WHOM TENANT HAS BEEN NOTIFIED HOLD MORTGAGES OR DEED OF TRUST LIENS OF THE PROPERTY, BUILDING OR PREMISES (“LANDLORD MORTGAGEES”) NOTICE AND REASONABLE TIME TO CURE ANY ALLEGED DEFAULT BY LANDLORD.
[[Image here]]
EXHIBIT E
PARKING
This Exhibit is attached to and made a part of the Lease by and between POY-DRAS CENTER, LLC (“Landlord”) and INTRADEL CORPORATION (“Tenant”) for space in the Building located at 650 Poydras Street, Suite 2805, New Orleans, Louisiana 70130.
Landlord shall make available to Tenant at the commencement of the term of this Lease the use of four (4) parking permits (the “Parking Permits”) in the Building parking garage (the “Parking ■Garage”) on an unreserved basis, two (2) of the permits shall be on a month-to-month basis; provided, however, Tenant must notify Landlord in writing within five (5) days of the execution hereof of the number of the Parking Permits which Tenant elects to use. Landlord shall have no obligation to make any Parking Permits available to Tenant other than the number of the Parking Permits which Tenant has so elected to use. With respect to the Spaces which Tenant elects to use, Tenant shall be obligated to pay the rental fee which is from time-to-time charged for such Parking Permits together with all applicable taxes charged by any governmental authority in connection with the rental of such Parking Permits. Tenant shall be obligated to contract directly with the | ¿manager of the Parking Garage for the use of the Parking Permits.
It is hereby agreed and understood that Landlord’s sole obligation hereunder is to make the Parking Permits available to Tenant. Tenant’s right to the use of such Parking Permits shall be subject to compliance with the rules and regulations promulgated from time-to-time by the manager of such Parking Garage, and shall be subject to termination for violation of any such rules or regulations upon notice from such manager. Landlord shall have no liability whatsoever for any property damage, loss or theft and/or personal injury which might occur as a result of or in connection with the use of the Parking Permits by Tenant, its employees, agents, servants, customers, invitees and licensees, and Tenant hereby agrees to indemnify and hold Landlord harmless from and against any and all costs, claims, expenses, and/or causes of action which Landlord may incur in connection with or arising out of Tenant’s use of the Parking Permits.
The failure, for any reason, of Landlord to provide or make available the Parking Permits to Tenant or the inability of Tenant to utilize these Parking Permits shall under no circumstances be deemed a default by Landlord pursuant to the terms of the Lease or give rise to any claim or cause of action by Tenant against Landlord, the same being hereby expressly waived by Tenant. Tenants [sic] sole remedy for such failure shall be the equitable abatement of Tenant’s parking rental fee. [Capitalization, underlining, and boldface in origi-nal1]
We find these pertinent provisions to be clear and unambiguous; we need not look to the parties’ intent by further interpretation. La. C.C. art. 2046.
*83 By letter delivered to Lessor dated 11 January 2005, Intradel elected to use four parking permits. At some point in 2005, two of the parking permits for unreserved spaces were converted to use for specific reserved spaces. And during the term of the lease, the parties communicated in customary manners, including emails.
|aBy a first (written) amendment to the lease dated and signed 8 November 2010, the lease was extended until 31 January 2016, with the Intradel’s option to terminate the lease on 31 January 2014, upon advance written notice.
By a formal written notice to vacate dated 24 February 2011, served by Lessor’s counsel on Intradel through Kerry W. Kirby (its registered agent), Intradel was directed to vacate the two reserved parking spaces effective at midnight on 31 March 2011. See La. C.C.P. arts. 4701 and 4702. No evidence exists in the record on appeal as to the date the 24 February 2011 notice was served on Intradel. By letter dated 25 February 2011, Lessor’s counsel notified Intradel that effective 31 March 2011, it was electing to terminate the two month-to-month parking permits of the four parking permits (those for the two reserved spaces), and that Intradel, after the termination, would have but two parking permits for unreserved spaces for the remainder of the lease term. To this letter is attached a formal notice to vacate of the same date. We assume that this letter and notice was received by Intradel because it is attached to its answer to the rule to show cause for eviction. Intradel protested the eviction in letters. Subsequently, in apparent error, Lessor’s parking garage operator billed Intradel for four parking permits (two reserved, two unreserved), which bill Intradel paid. Lessor by letter of 31 March 2011 acknowledged the error, returned the overpayment of rent for the two parking permits, and attached a new formal notice to vacate. We assume that this letter and notice was received by Intradel because it is also attached to its answer to the rule to show cause for eviction.
Lessor filed its rule to show cause for eviction on 1 April 2011, to which was attached the original lease, the first amendment to the lease, and the 24 February 2011 notice to vacate.
IfiThe rule to show cause for eviction was heard on 27 April 2011. The transcript reflects no evidence of any kind (written or oral) was received by the court and no stipulation of facts of any kind appears in the record on appeal or in the transcript. Only oral argument of counsel to and with the court was had.[1] The court ruled, denying the eviction of Intradel from the two parking permits.
No law permits a rule to show cause for eviction to be determined absent evidence. Although certain matters are undisputed by virtue of the attachments to Lessor’s rule to show cause and to Intradel’s answer to the rule (see La. C.C.P. art. 853), such as what the lease and first amendment to lease provided and the 25 February 2011 and 31 March 2011 letters and notices, we find the trial court erred because the undisputed evidence by virtue of the attachments to the rule and answer to the rule (the lease as amended provides that two of the parking permits were month-to-month only) clearly demonstrate that the provisions of La. C.C.P. art. 4701, et seq. (relative to the procedures and what is required to evict a tenant or occupant) *84 have been complied with. The lease as amended clearly has multiple parts describing the rented premises — suite 2805 with a multi-year term, two parking permits with a coterminous term ending when the lease terminates, and two parking permits that are merely leased by Intradel on a month-to-month basis. An amendment to the lease had to be in writing signed by both parties; the emails between the parties and/or their representatives and agents are not signed by the parties and thus do not constitute amendments to the lease. Many of the 17attachments to Intra-del’s answer are immaterial and irrelevant to the issue of eviction from the two parking permits leased month-to-month.
We note that Intradel argues that if they knew that they were not entitled to have four parking permits during the renewal term of the lease (after 31 December 2010), then they would not have signed the first amendment to the lease. They argue that such constitutes a failure for cause and error as those terms are understood under the Louisiana Civil Code; i.e., but for the right to four parking spaces, they would not have extended the lease for suite 2805 beyond its initial term. We do not address that issue because such goes beyond that which can be entertained on a rule to show cause for eviction. The failure of cause is a matter determined in an ordinary proceeding, not a summary proceeding. La. C.C. art. 2592.
For the foregoing reasons, we reverse the judgment of the trial court that denied Lessor possession of the two parking permits and failed to evict Intradel from those two permits. We render judgment in favor of Poydras Center, LLC, and against Intradel Corporation evicting Intradel Corporation from two parking permits and spaces in the premises bearing the address 650 Poydras Street, New Orleans, Louisiana, known as “Poydras Center.”
REVERSED AND RENDERED.

. In its opposition to Lessor's brief, Intradel argues that parol evidence is admissible to vary the terms of a written contract of lease to show that subsequent oral agreements modified the written contract. However, Intradel neither offered nor proffered written or oral evidence at the trial of the rule. See La. C.C.P. art. 1636.